Hi, my name is Jonathan Steffi, Appellate Defender representing John Mel Phillips in this matter. Good morning, Kathy Warnick representing the people of the state of Illinois. Each side has 15 minutes. We'd appreciate it if you'd get to your strongest points first. We don't get our watch in this division, especially when we only have one oral. But we'd appreciate it if you'd keep it moving. So anytime you're ready, Mr. Steffi. Thank you. As I said before, my name is Jonathan Steffi with the Appellate Defender's Office, and I represent John Mel Phillips, the appellant in this matter. If it's all right with the court, I'd like to talk about both of the issues that were briefed, starting with the first issue. Excuse me. May it please the court. My client, John Mel Phillips, was found guilty after the trial court found him accountable for the actions of Don Trell Sanders, who was a passenger in his car. However, upon reviewing the facts of the incident itself and the lack of evidence presented by the state, it is clear the state failed to meet their burden of proving accountability beyond a reasonable doubt. To prove someone accountable, in this case John Mel Phillips, the state had to prove that Phillips had knowledge of a criminal plan and intent to facilitate that offense. You can prove this by showing that he shared a criminal intent to participate with the principal or that they had a common criminal design. Now, in this case, the state presented no evidence at all that Phillips knew Sanders had a gun with him that day. At one point, right? I mean, he certainly knew when Sanders started blasting away to the car, right? At that point, Sanders had already exited the vehicle when he began to fire the gun. He's right near the car, right? So it's impossible to think that Phillips didn't know when Sanders was shooting the gun that his friend Sanders, who he delivered to the scene, was armed. Well, that's right. Once he fired the gun, Phillips would obviously know he was firing the gun. However, there was no evidence presented at all that he knew Sanders was armed until he had exited the vehicle and started shooting. Also, the neighborhood where this occurred was not where Lewis, the victim, lived. Lewis was not driving his own car. There was no inculpatory statement made by either defendant. And Lewis never saw, neither did the passenger in that car, Gresham, never saw my client's vehicle following that night. No evidence about any of those things. The facts of the case make it clear that this was actually an unforeseeable, spontaneous traffic altercation. And the case that highlights this sort of scenario is the Supreme Court's case in Taylor from 1999. In that case, the defendant was driving a passenger down a two-lane street. The street was made more narrow by the fact that cars were parked on both sides. The victims described the defendant's actions as blocking their car, which is a word that was used here to describe my client's alleged actions. Counsel, can I ask you this? I'm sorry. Please go ahead, Judge. Sorry. Even if you characterize this as an unforeseen traffic altercation, but after the unforeseen traffic altercation began, at some point there was testimony that the defendant moved his car into position so that it would essentially block the charger from making the turn so that they were trapped, they were stuck there. I mean, whether you accept the testimony or not, there is some testimony to that effect, isn't there? That's a good question. The witnesses do use the word... I read that in the record somewhere. There is some testimony to that effect, isn't there? Right. The victims do say they were blocked in. However, they also said that my client was making a left-hand turn. This happened in a four-way intersection. Both cars were traveling southbound. Lewis, the victim, was the first car. I think my question is a little bit more narrow than that, Counsel. Okay. Your theory is that this was an unforeseen traffic altercation that just mushroomed into shooting and just so happened that the victims knew each other and that the victim and the defendant in their car knew each other and there may have been a grudge or whatever that set of scenario facts are. But I am asking a more narrow question. Even if it were an unforeseen altercation, once they realized who was... the parties in each car realized who was in the other car, there is testimony that the defendant moved his car in such a way as to block the victim from making the turn, thereby escaping from what ultimately turned out to be gunfire and injury. Isn't that right? I don't think the record supports that the parties recognized each other before they had come into this awkward, confrontational position. There was testimony that when my client made the left turn and the U-turn of Lewis, they came together at some sort of angle or perpendicular. The testimony was they stopped for 15 seconds and nothing happened. They stared at each other. Right. And there was testimony that once the car backed up and the glare from the windshield was cleared up, they could see, the victim could see who was in the other car. Right. Lewis said at that point the glare had gone away and he saw my client in the car. So at that point, our argument is that this was a spontaneous traffic incident and the only point that it took this next step was after Sanders exited the car and started firing weapons. I guess you're missing the point. My question is couldn't the other argument could be, which is an argument that the State makes, is that no, it took the next step occurred when your client blocked the exit of the charger with his car. Now, whether you accept that testimony is true or not is something that the prior fact gets to decide whether it's true or not. So I'm saying that there is testimony that puts your client right in the mix, if you will, prior to the time that the shooter exited the car. Okay. Again, perhaps I'm not understanding you perfectly. That happens a lot. I'm saying it's unforeseeable because no evidence was presented that Sanders was armed that night, that my client, Phillips, could have known his passenger, Sanders, was going to jump out of the car, even as you said, if they recognized each other after they arrived at this scenario. It still, at that point, is not proven that he is accountable because it's not proven he shared an intent or knowledge with that passenger before he jumped out and started shooting. Well, you cite Taylor, and Taylor, this court, there were two defendants, Taylor and Hudson, and this court had reversed one of those two defendants and affirmed the other. Excuse me, is this Taylor, the appellate Taylor, or the Supreme Court? The Supreme Court. Okay. So are you citing just the appellate court? No, no, I'm the Supreme Court case. Very good. So the Supreme Court then took it and lifted the four factors you considered, and they affirmed the convictions of both these guys who were unarmed passengers. They weren't even driving the car. And the things you look at are proof the defendant was present during the perpetration of the offense, that he maintained close affiliation with his companions after commissioning the crime, he failed to report the crime, and flight from the scene. Those are four factors you consider. All four exist here, do they not? I'm not sure if close affiliation does, but it's definitely true he drove them away. Okay. He drove them there and drove them away, right? Correct. Okay. Those factors that you mentioned, those facts are present here, but, of course, in Taylor, the Supreme Court reversed the conviction of the driver who. . . If you look at it, I mean, maybe I'm misreading it because I have it in my hand, and it's possible for me I misread it. They reversed one, but I think they reversed the not guilty. I'm pretty sure that's what they did. I think they reversed, this court reversed one of those convictions, and the Supreme Court reversed this court for doing that. Reading the head note here, Miller held that evidence was sufficient to convict both defendants for murder on accountability theory for having gone with shooter in search of victim, remained with shooter afterwards, even though neither defendant took an active part in the shooting. So it's different. There's more knowledge, but less participation. I think they convicted, as I read, they convicted both. I think the facts in Taylor lent more foreseeability to the violence that happened in that offense than in this case. In Taylor, the driver knew his passenger was armed. He stopped the car at the armed man's request, and then he drove away, like you said. . . They also cite a bunch of other cases, Ortiz, Perez, Dennis. In all of those, though, the defendant testified, unlike this case. In all three of those cases, the defendant said, I knew nothing about my partner doing that horrible act. Indeed, in Perez, he says, the guy he killed was my friend. I had no idea he was going to kill my friend. I liked my friend. I stood next to this bad guy, so he murdered my friend. We don't have that here at all, do we? That's right. Neither defendant in this case testified. They both chose not to do that, and while that obviously didn't offer anything into the record, it certainly can't be held against them for not testifying. You don't, but it's not held for them either, right? So unlike the other cases where they decided to gut it out and testify and tell the judge or the jury, I did not know. The question is knowledge, right? The issue in this case is did the state sufficiently show, would a rational trier, any rational trier of fact, find that there was sufficient proof of knowledge of what the driver, John Mell, or whatever, John Mell, knew up to the time they pulled up to the time he left? And so in all those other cases, the defendant chose to testify and point at their partner and say, no, no, I had no idea this was going on. And frankly, the trial courts in all those cases didn't buy it. The appellate court in those cases didn't buy it, but the Supreme Court bought the defendant's testimony, which is kind of interesting how it works. But they send messages from above, and I think the message they send is that, you know, what showed that, why didn't he believe the defendant? They keep referring to the defendant's testimony in all three of those cases as uncontroversial. Right. That is the distinction with these cases. But the facts from the cases I cited, specifically Taylor and also Estrada from this court, there was more foreseeability, more knowledge that could be inferred by the actions of the co-defendant and defendant, and in this case that's just not there. Counsel, let me ask you a question. The state uses the words trapped or trapping oftentimes in their arguments. Was there any evidence at trial of use of the word trap by any of the witnesses, either Mr. Gresham or Mr. Lewis? I do not believe the word trap is in the trial record. I believe that one of them said blocked, but trapped is not. And I may point out that Gresham, the passenger, said we weren't really blocked in. And they were able to drive away on 21st Street, so there was not a complete block or trap. Didn't Mr. Gresham say that he said blocked and then he described it further by saying, well, it wasn't really blocked, it was in front? That's correct. And Mr. Lewis as well, when he said blocked, didn't he then explain himself after that? Like, well, we were kind of, then he used his hands to describe to the court how it was? Right. There were some hand gestures, which I'm sure were, at one point one person said perpendicular, the other time an angle, and at some point Phillips allegedly backed up, which to me would indicate he's trying to extract himself from the situation, and that's a fact that's uncontroverted. Well, again, how this actually worked, though, it's described. It's hard to describe in the briefs. It's not your fault. It's the state's fault. The trial court's looking at these guys, witnesses testifying, who are demonstrating with their hands. I'm afraid they're not saying for the record how this works. Right. Demonstrating with their hands how it worked. But for us to believe you, or to agree with you, we'd have to agree that your client has for no particular, for unfortunate happenstance decided to stop his car at that moment, at that time, at 21st and Omen, and it was just an utter fluke that there were two guys in a car, one of whom had killed a fellow gang member of your client. It was an utter fluke, and then another utter fluke, his partner sitting next to him got out of the car and shot these people, or shot at them, and he drove away. It's just an unfortunate incident. You would have to believe that it was a coincidence that the two parties knew each other and had this history of contention. Right. However, I don't think it's not a coincidence. And they stopped. I'm sorry? And they stopped, right? And they stopped. They did stop. As long as they saw each other and kept going, they'd be fine. But he stopped. I don't believe either. Your client stopped the car. It doesn't appear from the record that either car could have, in fact, not stopped. They came towards an impasse. And so I agree with what you're saying, a coincidence in terms of the parties know each other, but the actual actions and the circumstances in that four-way intersection is not a coincidence. It's someone trying to make a left-hand turn while someone is making a U-turn, and that's what precipitated this whole event. Mr. Steffing, did your client start making the U-turn first? That was unclear to me. Lewis's car, the victim, was the first car. They're traveling south. Lewis made the U-turn, and my client was making a left. Lewis started making the U-turn first, and then your client made this left-hand turn. That's right. So, like I said, the evidence presented and the facts of the case show that you cannot infer criminal intent by my client's actions, and there is no evidence at all that he had any knowledge. Why did Lewis say he was making the U-turn? He was looking for parking. So, as I said, you cannot infer knowledge or intent, and there's no evidence of knowledge or intent from my client's actions that was submitted at trial. Therefore, the State did not meet their burden of proof. If I may? What's the burden of proof? The State has to prove the unreasonable doubt, not only that Sanders actually shot someone, but that my client was accountable beyond a reasonable doubt for his actions, and the State, as I said, failed to meet that burden. If it's all right with the Court, I'd like to move on to the second issue. In this case, it was error for the trial court to admit improper speculative gang evidence against my client, as well as inadmissible hearsay. Of course, I'm aware of this Court's decision in Sanders recently. Tell us how your client is different from Sanders. I mean, you know, you've seen our decision in Sanders, so tell us why what we've reasoned in Sanders doesn't apply to your client. Certainly. There are several distinctions between these two cases. Here, of course, as I talked about with you, Phillips was merely accountable, and the evidence of that accountability was close. Also, the gang evidence directed and admitted against Phillips was more speculative, something this Court acknowledged in its opinion. Also, my client's trial attorney never invited or acquiesced to any of this gang evidence, a factor in your decision. My client also objected to the gang evidence several times. Did he raise it in the post-trial motion? No, the gang evidence was not specifically put in the written post-trial motion. However, review is appropriate here under plain error, specifically the first prong, as I said, the closely balanced prong. Sanders is different. Two people saw him shoot a gun. But the reason I ask, I mean, you raised only two issues, and this is of such importance to your client according to your brief, you know, it's surprising that you wouldn't have put it in your post-trial motion. I would agree with you. I can't speak for the trial attorney's state of mind at trial. We're here, and it's – That's why I get to ask you because you're the only one here. Exactly. You know, as you said, so that leads us to plain error. And it is reviewable under plain error because the evidence of my client's guilt, not Sanders', was closely balanced because the accountability, as I said, was not proven. Well, you just mentioned state of mind evidence, which, again, this whole case turns on that. But on this issue, the trial court explained in the post-trial motion, through its answer to the post-trial motion, what his state of mind was, which is I didn't consider that. So he said at the time the objection, I won't consider it for the truth of the matter asserted that both these defendants are pals of a guy that the victim had killed in a car accident. I won't consider it a crime. Are you a fair attorney? It's a great deed by the mother. I won't consider that. And then at the post-trial motions, this came up by Sanders, and the trial court again, Jim Lynn, said, as I said, I didn't consider it for those bad purposes. I didn't consider the idea that they were gang – he described motive at some length, as your brief points out, and then he says, but I didn't consider it for bad purposes. I think it's the state that cites Baez, or maybe you cite Baez, a death case where now Justice Lampkin said something in error at the trial, and then at sentencing she corrected herself, oh, just to make it clear, I meant that he deserved to be sentenced to death. And our Supreme Court said, well, comments by the trial court at a post-sentencing hearing shed light on the claims of errors raised by the defendant are permissible. In fact, they're encouraged to give the appellate court the benefit of the trial court's reasoned judgment. And then they accepted the court's after-the-fact explanation. Why shouldn't we accept Jim Lynn, or Judge Lynn's, after-the-fact explanation of he didn't do anything against the law? We're exactly arguing that you should consider the post-trial motion comments because at the post-trial motion comments, trial judges' first recollection of this case was that it was gang-related. So even though at trial, and it is finding a fact, the judge may have said I didn't consider the gang evidence, or I didn't consider the hearsay evidence for its truth, I'm arguing you look to that comment, which you said, of course, is relevant, especially here where these issues were argued at trial. Gang-related was his first impression. That means that was considered in finding my client guilty, and that's why it was error. And it was also error because the evidence in this case failed to satisfy our Supreme Court standards for using gang evidence. This court cited to Villareal, which, you know, like many other cases, stated gang evidence is admissible only when there is sufficient proof that the membership is related to the crime. And that court used the word substantiated. And in our case, there is nothing at all from the crime itself, from that interaction at that intersection in the shooting, to substantiate the state's theory that this is a gang-motivated shooting. And our Supreme Court has held them that evidence is not there, that the evidence is inadmissible. And easily, the Supreme Court said unless the state proved that, one, there was a gang plan to retaliate, and, two, the defendant was aware of that plan, the evidence relating to gangs was irrelevant and highly prejudicial. That's exactly what happened here. Well, Justice Steffi, how does that square with the reasoning in Sanders where in order to accept that there was nothing, nothing at all that connected this crime to gangs, you would have to assume that two people who happened to meet in an intersection and there wasn't really a traffic altercation, one was trying to make U-turn while the other one was turning, that for no particular reason, the shooter jumped out of his car and started firing. Doesn't that seem a little far-fetched? I would argue that it doesn't. We're well familiar with road rage. The fact that these two parties were driving down the street, someone makes a U-turn in a four-way intersection, which is pretty unforeseeable. You know, Lewis, I'm sorry, Phillips, can't be responsible for the fact that his passenger may have just simply flipped out in anger and ran out of the car and acted completely on his own volition, unbeknownst rather to my client. So, in other words, you don't agree with our ruling in Sanders? Respectfully, in some regards, I argue that it is not a lack of agreement. It's that it doesn't apply to this case because of facts. Okay, then, no. You've already ruled, but you don't have to agree with it. We don't take it personally. Thank you. So as I said, the gang evidence in this case was inadmissible because it failed to satisfy cases like Villarreal, Easley, and Smith, which require some evidence connecting it to the actual crime. And maybe this is something, in keeping with what Justice Cunningham was saying, and this Court noted in the opinion, that sometimes gang evidence is admissible to explain unexplainable offenses. But the judge didn't really rely on it in his ruling. I'm sorry?  At the time of trial, he overruled the gang objection and he said he was taking it for the basis related to identification. I'm not arguing that was proper. But at the finding of fact, you are correct. The word gang is not in it. The Court describes the relationships as friends and associates. Associates, in this case, means gang members. There is no evidence of a fraternal organization or a business partnership. So I believe it's clear. Well, how do you know the definition of associates really counts? How do you make that jump? I just think, from this case, and the fact that post-trial motion, the judge recalled it as gang related. I believe it is, from the record, I think you can infer, in fact, that the Court found it useful. And when the Court said it had motive, it found motive, motive in this case could only come from two things. That was the improper gang evidence and the inadmissible hearsay. There's just no way to get around that. But turning back to the last point, I think, in the opinion regarding the gang evidence, was this Court felt that it could be used in this case to explain an unexplainable offense. However, I submit to you that this is not an unexplainable event. This is an unforeseeable, but not unexplainable, and spontaneous traffic altercation that occurred in a four-way intersection. Therefore, it wasn't needed to provide a motive or a theory for this case. But are we allowed to do that, really, in this Court? Isn't it entirely up to the trier of fact? In this case, the next, I don't know, Jim's been a prosecutor and defense attorney and judge for 30-some years. Isn't he supposed to figure out the inferences? And we can only reverse if no rational trier of fact would come up with the same inferences. I agree, you have a nice inference. It's road rage. But, again, as she started at the beginning of the argument, both cars could have been driven away. There's plenty of room on all sides. Nobody really blacked anybody. So why the guy would jump out of the car and shoot somebody for slowing him down is a little dramatic. But isn't it what the judges do in this case? It's a bench trial. He took a bench. You're right. I mean, the standard of review is any rational trier of fact. However, I'm arguing here today that the evidence presented would not allow any rational trier of fact to conclude the statement at its burden of proving Phillips accountable for Sanders' actions. Briefly, if I may, the hearsay issue. The court admitted over-objection, and this objection was included in the post-trial motion, so it is fully preserved for review here. Statements from Lewis that his mother said that those boys threatened her. And this was inadmissible because it's hearsay, just simply hearsay. And if you look at it, it's unreliable. Factors that our courts use to evaluate hearsay were whether it's corroborated by evidence, other evidence, or was the declarant available for cross, or was there an objective indicia of trustworthiness. None of that is present here. His mother said this. What was it offered for, though? I'm sorry? What was it offered for in this case? They knew each other for years, right? Both sides testified. I've known those guys for years. You're right. I've known them both as gang members for years as well. You're right. And I know them as gang members as a gang member I ran over accidentally some time ago. So all that was in without any basis of hearsay. That's what he knows. Again, the word absolutely or I think probably however the witness said it. But all that's in. So what was harmed? What bad thing came out from the hearsay? I mean, the hearsay really is when the mother of the victim goes to apologize to some of the gang members of the deceased, they threatened her. And the judge says, I'm not considering it. The judge said, that's right, the judge said I'm considering it for the basis of identification. Right. And that's not a proper use of hearsay testimony for identification because his mother never testified. But there's no question in your case about, in this case, about identification. You're conceding he was there, drove up there, right? Right. He's the right guy. I agree. He's the right guy. They didn't need either the gang evidence or the hearsay evidence for identification because, as you said, Lewis and Phillips knew each other from going to school together. That wasn't Sanders' theory, though, right? So Sanders' trial was on the wrong guy, and your guy's theory, apparently, without him testifying, was on the right guy, but I didn't know what Sanders was up to. The prejudice to my client from allowing this statement of threat in is extreme. It's the only thing used to directly tie Phillips to anything having any ill will towards Lewis. I'm playing it simple. That's the prejudice. That is what supplied the court's motive, which it explicitly relied upon at its finding of fact. So in closing, if the court has no further questions, I'd like to reserve a few minutes for rebuttal. You have. Thank you. Ms. Warnick. Good morning. May it please the court. First, with regard to the accountability issue, clearly accountability states that the defendant is guilty if he participates before, during, or after the crime. Tell me how he participates. Let's go through each one. How does he participate before? Well, he drives the car, which cuts off. Okay, but does he have to know when he's driving the car that the shooter intended to do something, something naughty that he shouldn't have done? Does he have to know that? He doesn't have to know, but the clear inference here is that he does. The clear inference. No, that's not what I asked. Does he have to know that? He doesn't have to know that, no. Do you have to show that either he knew or there's some inference that can be drawn that he knew? So as long as he was just driving the car, if there's no evidence that he knew anything, you're saying that's okay? Well, this is not a situation where the defendant ---- My questions are really narrow and very focused on the facts of this case, because these situations are so fact-driven. They really are fact-driven with respect to whether or not you can prove accountability. It's a very fact-driven situation. So I'm asking about the facts of this particular case. Do you have to show anything before the actual commission of the crime with respect to the knowledge or intent of this defendant? Yes, you do. And in this case, the evidence shows ---- What is that evidence? The evidence shows that the defendant, who was a driver of the vehicle, made a U-turn ---- Is driving the vehicle with the shooter in it sufficient to show intent? Yes. And how so? Because the driver took the affirmative action of changing the path of his vehicle, going in front of the victim's vehicle, moving the vehicle twice. Was there evidence that he changed the path of his vehicle? Yes, he made a U-turn in front of the victim's vehicle, and then he ---- No, no, no, the U-turn was made by the victim. Yes, but then he moved his car so that he was blocking the progress of the victim's vehicle. Okay, so you constitute that that satisfies the intent part beyond a reasonable doubt. Okay, move to the next element. Then his passenger got out of the vehicle, and he shot multiple times. This is not a situation where the shooter shot one time. He shot seven times. During the process of the shooting, the shooter is running or moving down the street with the gun. What about the gun? How do we know that he knew that the shooter had a gun? Is there any evidence of that, or is there any evidence to the contrary? There's no evidence either way whether ---- So does that satisfy beyond a reasonable doubt? I mean, how do you know that he knew that the shooter had a gun? I mean, doesn't he have to know that? In addition to ---- let's assume for the moment that you are correct, that he took some action in blocking the movement of the other vehicle. Is it required that he then know that the shooter is going to do something that comes next? Is he required to know that or not? It's a fair reference that he did know that. But that's not my question. Does the law require him to know that or not? Well, the law requires that they have a common design, yes. Well, what is the common design here? What is the evidence of the common design? The common design is that they went together, they drove together. The defendant stopped the progress of the victim. He waited until the shooter shot the victim, and then the shooter got back into the front passenger side of the vehicle, and they sped off. I have a more narrow question this morning that you haven't answered, and that is, is he required to know, is the defendant required to know that the shooter had a gun? I don't know how to answer the question other than to say that I think that... Well, you could say yes or you could say no. Well, here there's the inference. I think that you have to have the inference that the defendant knew that... No, you only have to have an inference if there's no other evidence. I'm asking a pretty simple question. Is there a requirement that the defendant know that his passenger had a gun in his car? Is there a requirement to satisfy all of the elements that you need to satisfy to show accountability for the shooting? Does the defendant have to know that there is something with which the shooting is going to take place? Is there a gun involved? But in this case... Is he required to know that there is a gun? Yes or no? But in this case, Evans did show that he knew that there was a gun, so the requirement would be met. I'm asking you, and it's a simple question, I'm just asking you, is there a requirement that he know that the shooter had a gun before he actually did the shooting? Of course everybody knew there was a gun after the shooting. That's not what I'm asking you. I'm just asking a simple question. Yes, yes, he would have to know that there was a gun. Okay, is there evidence in this case to show that he knew that there was a gun? Yes, there is. And what is that evidence? The evidence is that they went together, they impeded the progress of the victim, he stopped, he waited, he observed, he knew exactly what his... If you go drive a car with someone and you stop while they're observing them, do you know what they have in their pocket? I mean, is that the evidence? The evidence you're saying, the evidence that they went together, they stopped and impeded the progress, that's the evidence that the defendant knew that the shooter had a gun? Is that what you're telling me? If, let's just say, that the defendant, our defendant, Phillips, didn't know that defendant Sanders had a gun, then the reasonable inference would be that once he jumped out of the car and shot, not once, but seven times, then he could have driven the car away and retreated. But he didn't do that. He waited. And so from his actions, also following the crime, we can go back and infer that he knew prior to the crime that defendant Sanders had a gun. Good recovery this morning. Counsel, can I ask you from the record? Thank you. Looking at the record, the trial judge no question relied on the blocking, the inference of the blocking to suggest that he was an accessory. But if we look at the testimony, again, which I asked counsel about, Mr. Gresham in his testimony says, the charger came, blocked us off, somebody got out shooting. And then he says two questions later, yes, it really wasn't blocked, but it was in front. So at one point he says it was blocked, then he says, well, it really wasn't blocked, it was in front. That's the testimony of Mr. Gresham, is that right? Yes. So isn't there a conflict in his own testimony that the court relied upon one part of it and not the other part? It doesn't appear that it's a conflict in that it appears that it was how the parties were attempting to describe what happened to the two cars. But, again, it goes back to a trier of fact issue because as Justice Quinn pointed out, the witnesses were using hand motions. And so the trial judge was able to see these hand motions and from the way the witnesses described the event, clearly believed that the progress of the vehicle was impeded. I'm not so certain that it matters whether we use the word blocked or trapped. Trapped is never mentioned by any of the witnesses. Yes, I understand. The State uses trapped all the time in our arguments. Yes, but the point I'm trying to make is that the victims, you know, there was two gentlemen in the car, not just Mr. Lewis but also Mr. Gresham. The victims in the car felt that they could not go further because the defendants cut off their progress, and that's really the relevance. They didn't say they cut off their progress. They could have gone another way if they wanted to. They could have gone down 21st Street if they wanted to. Well, their car stopped. Yeah, they stopped. After 15 seconds, everyone looked at one another. They could have gone down 21st Street if they wanted to, but they chose not to. I'm not certain that there's any evidence in the record that they felt that they were free to go in another direction. I think that the evidence shows that they saw the defendants in the vehicle, that the defendants went in front of their vehicle, and that they stopped. The defendants were making a left turn from what Mr. Lewis' testimony was. Yes. The defendants are driving along, making a left turn. All of a sudden, this guy in front of them makes a really quick U-turn. Yes. And at one point, Mr. Lewis says, because we stopped on a dime, like we were almost about to collide. So Mr. U-turn, the victim, is about to collide with the guy making a left turn. Right? Yes. Once the defendant backs off, the victim stays there. So how does that show the common design by the driver? Why would he just stay there and let the guy get out and shoot him? Why would he back up and try to see who's in there? It seems to me that the evidence shows that the action by the defendant's vehicle was motivated by their desire to stop the progress of the victim's vehicle. What in the evidence shows that, is my question, in the testimony? I don't have the record sites at hand, but their actions of moving, changing their vehicle and stopping. The defendant moved back, away from the confrontation, correct? I don't recall the evidence as saying that they moved back. It's right here. I've got it on record, page number 8384 on the record. Mr. Lewis says, across. Or the question is from the defense counsel. So the charger backed up. Is that correct? Yes, Mr. Lewis says. The charger backed up, based on the ground, the victim's car. But the question is where it is in relationship to the victim's car. And the question is, is their ability to get out of the car, go towards the victim's car and accomplish what they set out to do, which is shoot at the people in the car. But when you say that's what they wanted to do, what evidence is there that the driver of this car had any intent to do anything other than make a left turn on the 21st? Because they stopped in exactly the same place where the victims were at 1 o'clock in the morning. And they stopped in range of the victims, or the defendants being able to shoot the victims. So at 1 o'clock in the morning. He did stop, though. He would have got a better shot if he stayed where he was, right? I wasn't there. I don't know. Again, it's a trier of fact question. The trier of fact heard the evidence. What the defendant is asking this court to do is reweigh the evidence. And it was a trial judge who heard all those witnesses. One other question. When you said the fact that they stopped at 1 o'clock in the morning, but it was the victim's car that caused the car behind it to stop. The victim's car made a sudden U-turn, thereby blocking the progress of the charger that caused the charger to stop. That's how I understood it. Isn't that what happened? Your Honor, respectfully, I understood the record differently. I understood that the progress of the charger was the one that was impeded, the progress of the victim's car. But the U-turn occurred before the U-turn. The sequence of events, as I read it, started with the victim making a U-turn in search of a parking space. First, yes. Okay. So when I read your brief, you essentially concede that there's no direct evidence that the defendant was involved in the planning of the attack. But you argue that the evidence shows that he was really integral to the That's your argument. Yes. And do you think that that ñ what's the standard of proof here? Standard of proof is if no rational trier effect would find otherwise. That's the standard of proof. How about beyond a reasonable doubt? Well, yes, it was ñ yes. Do you think that that factor, that what you just said, serving as the getaway driver, which is the term that you used, do you think that that is sufficient to establish proof beyond a reasonable doubt for all of the elements that you need, that the state needs to prove to establish accountability for this crime? Yes. Yes, I do. Yes. Counsel, can I ask you about the Dennis case, Illinois Supreme Court case, 181 Illinois 2nd? The Supreme Court says one who forms intent to facilitate escape after an offense is subject to Criminal Code 31-5, which is concealing or aiding a fugitive. Isn't that what we have in this case? No. Not accountability? No. No. They went together. The defendant waited, waited. I mean, again, this is not one gunshot. The co-defendant is going down the street with a gun. He sees what he's doing. The co-defendant gets back in the passenger's side. This is accountability through and through. This is before, this is during, and this is after. You have all three phases. In Dennis, the defendant testified. Yes. He pulled into a tea alley where he could not see, according to his own testimony, the robbery of the two Hispanics by his partner. Yes. Indeed, he said, we were there to buy dope. My partner got out to buy dope, saw the two Hispanics in front of me in the garbage truck in front of them. I pulled into a tea alley around the corner where I didn't see anything. Next thing I see is the two Hispanics chasing my partner. He hopped in my car and drove away. I thought he was being attacked by the two Hispanics. So he didn't see a thing. That's his testimony. Correct. And in this, as you pointed out previously, there is no testimony by either defendant in this case. So are we holding that against the defendant? Absolutely not. Absolutely not. So there's no evidence one way or another as to what was in this gentleman's head and what he knew about the common design or plan? No evidence of that. Other than the inferences that the Trier effect is free to draw from the evidence. And that's the blocking. And that's, yes. And also the waiting. He testified that Sanders had the gun in his hand when he exited the car. Yes. So again, it's a reasonable inference. It's a reasonable inference. He was in the back seat, though, wasn't he? At the beginning he was in the back seat, but he got back into the car in the front seat. Right. But when he left, he was in the back seat. Yes. Behind the driver. Yes. Again, which I would say supports actually the inference that he knew he had a gun. He's in the front seat, defendant's in the back seat, easy access, can get out, accomplish the crime. Absolutely. It's a fair inference. Couldn't he have a gun hidden and all of a sudden he took it out? How would the driver know he had a gun? Then it's an amazing coincidence that he just stopped at 1 o'clock in the morning where the two victims were in the middle of the street just randomly to let this guy out of the car. And I would submit. Because the guy was making a U-turn right into him? I would submit, no. I would submit that it's an intentional stopping. I would submit that it was no random act and that, however, the driver accomplished their act of stopping the car, their mission was to shoot at the victims. And I would. Yeah, that makes sense. But don't you have to prove that? And I don't see anything in the record that suggests that you prove that. I mean, you've got to put some evidence in that shows that that theory is reliable. I mean, you know, it could be, but they put in evidence that showed that the guy was making a U-turn because he was looking for a parking space and that there was no evidence of any of the cars being aware of following anyone or that the victim saw anybody following him or that the defendants were in pursuit. Nobody testified that there was anything other than a coincidental meeting of these parties at that time because the victim made a U-turn looking for a parking space near to his father's house. But does it really matter whether the defendant made a U-turn or not? I mean, the point is, is that the defendants. It doesn't matter because the action of the defendant's vehicle is what set the chain of events in motion that stopped the two vehicles from moving forward. And the defendant did not have to stop, so the defendant took the aggressive and affirmative. It's the victim that made the U-turn that started the chain of events that started this whole progress. But the defendant's vehicle stopped, and that's the point. According to the record, he had to because the victim made a U-turn right in front of him. And then the co-defendant got out of the vehicle. Counsel, if he was stalking him or following him, why wouldn't he just follow him around making a U-turn? Why would he attempt to go left on 21st? Could a reasonable inference be that he was just making a turn, they ran into the same guys, and then he realized who they were, he got on his own in the back seat of the car and shot? It doesn't change the defendant's accountability, quite frankly. The defendant is still accountable for the actions. The trier of fact heard the evidence. He didn't conclude. Judge Lynn didn't conclude, make that conclusion. He heard the witnesses. He saw their testimony. He made the conclusion that the defendant was accountable. And this court was a non-rational decision, and this court must affirm his decision respectfully. With regards to the evidentiary questions, as this court is very well aware, it issued its opinion in People v. Sanders. And based on the doctrine of stare decisis, unless the defendant can come forth with some compelling reasons as to why this court should depart from that decision, this court is. I asked your opponent, Ms. Sasseffi, to tell me how his client differed from Sanders, and he gave me a description. Your brief was very perfunctory. Do you believe that there's any difference between Sanders in this case with respect to the second issue? My brief was perfunctory because I don't believe there's any significant difference between Sanders and Phillips, especially any significant difference which helps Phillips. The plain error analysis is still the same. As to the gang evidence, neither defendant fully preserved the issue, and therefore it's a plain error analysis. And regardless of whether Phillips was accountable or he was the shooter, the fact is they're responsible for each other's actions. So the accountable person is just as responsible for the shooting as it works both ways. So there's no difference in culpability, or you're not more or less guilty because you're the accountable person. And the evidence of guilt was overwhelming. I mean, this court actually called Reginald Lewis, I believe, a model of clarity. He knew the defendant for years. He had grown up with him. He identified him in a photo array, in a lineup, and in court. His testimony was very, very clear. With respect to Sanders, and you're assuming that we, like you, agree that everything that applies to Sanders applies to this defendant. We may not agree with that. Well, with regards to the evidentiary issues and in regards to this court's analysis of the evidentiary issues, I would believe that the analysis would be the same. And, again, I think the guilt with regards to both defendants was overwhelming. I mean, not only did Reginald Lewis testify, obviously the identifications by Gressom weren't nearly as strong, but the actions were corroborated, that this guy got out of the car and started shooting at the victim, as were Curt Utley, who was really objective, bystander, who witnessed at least the second half of the crime. With regards to the gang evidence, in Sanders, this court found three basis for which the evidence was properly admitted. And here, two of those reasons apply. Primarily is that the evidence was proper to show motive. It was properly admitted. The gang evidence was properly admitted to explain an otherwise unexplained event, and also that the trial court didn't consider the gang evidence at all in its findings. With regards to the alleged hearsay evidence, the defendant, Phillips, actually stands in a worse position than the defendant, Sanders, because a lot of the testimony was elicited by his own attorney. So the part about pointing to the defendant, and the part about how the mother knew the two defendants, was brought out by Phillips' own attorney. So that goes beyond plain error. It's actually affirmative forfeiture, and defendants should not at all be allowed to raise it now. To the extent, however, that it was admitted at all by the evidence of the people, it was just quite simply not admitted for the truth of the matter asserted. It was non-hearsay. It was admitted for the court's basis for its, or excuse me, for the basis for the identification, and the judge made it very, very clear that he was not admitting it for the truth of the matter asserted. So for all those reasons, the people would respectfully request that this court affirm the defendant's convictions. Thank you. Mr. Steffi, briefly. Thank you. I'll try to keep this as brief as possible. The state tries to say that they did prove accountability beyond a reasonable doubt, and I think this court brought up most of the points I wanted to, or I did talk about and wanted to talk about. But the car absolutely was not blocked in. It was able to leave down 21st Street. The state just conceded that they needed to show that. Before or after your client pulled back 15 feet, as pointed out by Justice Connors? The car, my client moved back, and then the victim started leaving East Down Street. So before he pulled back, do we know, can we tell from this record whether he's blocked in? I believe the record, I believe the record does say he was able to go down 21st Street even before he moved back. The state concedes they needed to prove that my client knew there was a gun before they actually, before Sanders actually started shooting. That's not, it wasn't proven. It just wasn't, there's no evidence about it. Driving the shooter away is not a decisive issue on its own, and moreover, the one witness who saw that was impeached by a police officer. The number of shots fired are not relevant to anything that has to do with my client. The state said there was no evidence provided either way regarding whether or not my client knew of any criminal plan or design. No evidence either way means they did not prove it beyond reasonable doubt. Regarding the gang evidence briefly, this court concedes it was speculative, I've differentiated the distinctions between these two cases, and the state concedes in its brief, I think page 24 and 26, that the gang evidence was used by the trial court in its decision. And plain error is appropriate here because, as I said, the evidence regarding my client's accountability was closely balanced. So John Mel Phillips respectfully asks this court to reverse this conviction or in the alternative, remand his case for a new trial without the improper evidence. Thank you. This case will be taken under advisement. This court is adjourned.